*945 OPINION.
Smith:
The petitioners claim that from January 1, 1917, to December 31, 1920, they were members of an affiliated group consisting of Flannery Bolt Co., American Vanadium Co., J. Rogers Flannery & Co., Keystone Nut Lock Manufacturing Co., Vanadium Metals Co., Vanadium Chemical Co., Electro Vanadium Reduction Co., and the Collier Land Co. Each of the petitioners has been held by the respondent to be nonaffiliated with any other company.
*946 Tbe applicable provisions of the Revenue Acts controlling this situation are section 1331 of the Revenue Act of 1921, and section 240 of the Revenue Act of 1918, the pertinent portions of which read as follows:
Sec. 1331. (b) For tbe purpose of this section a corporation or partnership was affiliated with one or more corporations or partnerships (1) when such corporation or partnership owned directly or controlled through closely affiliated interests or by a nominee or nominees all or substantially all the stock of the other or others, or (2) when substantially all the stock of two or more corporations or the business of two or more partnerships was owned by the same interests: Provided, That such corporations or partnerships were engaged in the same or a closely related business, or one corporation or partnership bought from or sold to another corporation or partnership products or services at prices above or below the current market, thus effecting an artificial distribution of profits, or one corporation or partnership in any way so arranged its financial relationships with another corporation or partnership as to assign to it a disproportionate share of net income or invested capital. * * *
(c) The provisions of this section are declaratory of the provisions of Title II of the Revenue Act of 1917.
Seo. 240. (b) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.
With respect to the year 1917, controlled by section 1331 of the Revenue Act of 1921, the respondent contends that substantially all the stock of two or more of the companies was not owned by the same interests for the reasons (1) that the companies were not engaged in the same or a closely related business; (2) that there was no artificial distribution of profits through the buying or selling of products or services (as between the companies) at prices above or below the current market; and (3) that there was no assignment from one company to the other of a disproportionate share of net income or invested capital through arrangements of financial relationships. The respondent further contends that for the years 1918, 1919, and 1920 the companies were not affiliated, since substantially all of the stock of two or more of the companies was not owned or controlled by the same interests.
For all of the years 1917 to 1920, inclusive, it is manifest that two or more corporations can not be considered as affiliated unless “ one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the others ” or unless “ substantially all the stock of two or more corporations is owned or controlled by the same interests.”
In Great Lakes Hotel Co., 10 B. T. A. 120, we said:
The “ control ” referred to by section 240 of the statute is of “ substantially all of the stock,” not simply corporate control of the conduct of the business or *947 policy pursued. Cooperation in or consent to corporate control or policy, by tbe giving of proxies or otherwise, does not necessarily mean control or ownership of substantially all of the stock. * * *
In interpreting the statute and its kindred provision of the Revenue Act of 1918, it has been held that there must be full and complete control of substantially all the stock and that this control must be a genuine one actually exercised. Appeal of Isse Koch & Co., 1 B. T. A. 624; Appeal of Cleveland & Mahoning Valley Railway Co., 4 B. T. A. 1240; Benjamin Electric Manufacturing Co. v. Commissioner, 6 B. T. A. 1204. Control of the business of a corporation is not control of its stock, within the meaning of the statute, and where there is control of a corporation’s business, but there are quiescent stockholders present, representing a sizeable minority, such business control does not amount to the control of substantially all of the stock. Appeal of Watsontown Brick, Co., 3 B. T. A. 85.
The Board has also held “ the control, however, referred to in the statute, whether it be legal or otherwise, means control of the voting rights of the stock.” Canyon Lumber Co., 1 B. T. A. 473; Isse Koch & Co., supra; Midland Refining Co., 2 B. T. A. 292.
In J. K. Rishel Furniture Co., 9 B. T. A. 287, we said:
* * * The facts that stockholders would have given proxies to the majority to vote their stock, had such request been made; that the minority stockholders were friendly to the majority; that at the time the minority purchased their stock, there was some sort of oral understanding that the majority would be given an opportunity to buy stock which the minority might desire to sell, and other similar circumstances are not sufficient to convince us that the control of the voting rights of stock contemplated by the statute existed in this case.
In Rishell Phonograph Co., 2 B. T. A. 229, we said:
* * * The mere fact of relationship by blood or affinity does not of itself constitute proof of control, and the same may be said of friendship. * * *
In Greenville Codling & Export Corporation, 4 B. T. A. 183, we said:
* * * The fact of intercompany relations, or the absence of them, without the necessary stock ownership or control as provided in the statute, is not sufficient to permit or require affiliation. * * *
In the instant proceedings the petitioners seek to make out a case of affiliation, not so much on the theory that the stock of what may be called minority interests was controlled by the majority or dominant interests, but rather on the theory that the stockholders of the various companies as a whole constituted the same interests. Counsel for petitioners in their opening statement outlined their theory with regard to affiliation in respect of the present petitioners as follows:
* * * It is virtually a one-man layout, but we are not claiming that the one man, by virtue of his stockholdings, dominated and controlled these corporations, but we are claiming that he did so as the representative of common interests ; in other words, these stockholders were all of the same interests. * * *
*948 Counsel also further stated :
* * ⅜ But, taken as a whole, as we expect to prove, X would say that over 95 per cent of the stockholders were invited by the Flannerys or this group, this basic group, to join these companies. Upon that basis rests our affiliation, that it is one group that was controlled by the executive, James J. Flannery, * * *
The petitioners have sought to divide the stockholders into four groups as follows:
(1) The Flannery family, officers, incorporators, and directors in the various companies involved.
(2) Employees of the Flannery interests.
(3) Flannery investing associates.
(4) Miscellaneous holdings.
The respondent has denied that these several groups constituted the “ same interests ” within the meaning of the statute and further that the members of the several groups do not constitute the “ same interests.” Thus, it is contended that the members of the first group are not necessarily the “ same interests,” even if it be considered that the members of the Flannery family constitute the same interests. It is pointed out that some of the officers and incorporators of one company are not the same interests with officers and incorpora-tors of some of the other companies. For instance, it is shown that practically 100 per cent of the stock of J. Rogers Flannery & Co. was owned by J. Rogers Flannery and other members of the Flannery family. It is also shown that 100 per cent of the stockholders of the Electro Vanadium Reduction Co. are also classed in group (1). The respondent points out, however, that only 55 per cent of the stock of this company was owned by members of the Flannery family, most of the balance being owned by certain individuals who owned no stock in J. Rogers Flannery & Co., and that there is no showing that the interests of the latter are the same as the interests of members of the Flannery family.
The respondent further contends that the Flannery family owned only the following percentages of the stock of the several companies:
[[Image here]]
It is contended that these percentages do not represent “ substantially all of the stock ” of the companies and that in the absence of any showing that the Flannerys controlled the remaining stock it can not be said that the so-called “ Flannery interests ” owned or controlled substantially all of the stock of these companies.
*949 Assuming, however, for the sake of argument, that the Flannery family, officers, directors, and incorporators of the several corporations claiming to be affiliated constitute the “ same interests,” we find the percentages of the total stock represented by this group at December 31, 1917, to be as follows:
[[Image here]]
The evidence clearly shows that all of the stockholders of the several corporations held their stock absolutely. They were free to sell it whenever and to whomsoever they wished. They were under no obligation to give proxies upon this stock to the Flannerys at any time. Many of the stockholders testified that there were no “strings ” attached to their ownership of their stock.
An analysis of the stockholdings by the group “ employees ” and by the group “ investing associates ” or “ key men ” and by the miscellaneous group of stockholders shows that in only a few instances did the individuals hold stock in more than two of the companies. The interests of the stockholders classed as “ investing associates ” in the Vanadium Metals Co. and in the Keystone Nut Lock Manufacturing Co. do not appear to be the same as the interests of the stockholders of the Flannery Bolt Co. The profits of one company did not necessarily mean profits for the other companies. There is nothing to show that the stockholders of the Vanadium Metals Co., who apparently were interested in that company only for the purpose of profits or dividends from that company, were particularly interested in the profits which might be made by the Flannery Bolt Co., since such profits would not accrue directly to them. The only ground for contending that they were the “ same interests ” appears to be that they had a personal friendship for the Flannerys and were interested in having them succeed in all their undertakings. We are of the opinion, however, that this is not enough to constitute them the “ same interests ” within the meaning of the taxing statute. Although the record indicates that there were some intercorporate relationships, it does not show that the profits of any one corporation were profits of any other corporation. The charging of overhead costs to the various corporations was left to James J. Flannery and there is nothing to indicate. that he did not properly allocate such costs to the several corporations.
*950 Even if it be considered that the Flannery family, the officers, directors, and incorporators of the several corporations constituted the “ same interests,” we can not find that substantially all of the stock of any of these corporations was owned by the same group except in the case of J. Rogers Flannery & Co. and of the Electro Yanadium Reduction Co., and, for reasons above stated, we are of the opinion that the stockholders of the Electro Yanadium Reduction Co., aside from members of the Flannery family (owning 55 per cent of the stock) were not the same interests with the stockholders of J. Rogers Flannery & Co.
Upon the record as made the determination of the respondent that no one of these corporations was affiliated with any other is sustained.

J udgments will be entered under Rule 50.